IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| R. WAYNE KLEIN, as Receiver of National Note of Utah, LC *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>LARRY L. ADAMS, *et al.*,<br><br>Defendants. | **MEMORANDUM DECISION**<br><br><br>Case No. 2:14-CV-00614-BSJ<br><br>District Judge Bruce S. Jenkins |

The remaining Defendants in this case are Kimberly J. Brasher ("Brasher"), Kristine S. Olson Profit Sharing Plan ("Olson PSP"), Kristine S. Olson ("Olson"), and Lisa Sanders Shah ("Shah") (collectively, "the Defendants"). Before the court are the summary judgment motions filed by Plaintiff R. Wayne Klein (the "Receiver") against each remaining Defendant.[1] The court heard oral argument on the summary judgment motion relating to Defendant Brasher on July 16, 2015. Christopher Martinez appeared on behalf of the Receiver and Defendant Brasher appeared pro se.[2] The court heard oral argument on the summary judgment motions as to Defendants Olson PSP, Olson, and Shah on June 24, 2015 and November 9, 2015. Christopher Martinez appeared on behalf of the Receiver and Paul Barton appeared on behalf of the three Defendants.[3]

---

[1] *See* Mot. for Summ. J. and Mem. in Supp. (Kimberly J. Brasher), filed May 1, 2015 (CM/ECF No. 384); Mot. for Summ. J. and Mem. in Supp. (Kristine S. Olson Profit Sharing Plan and Kristine S. Olson), filed May 1, 2015 (CM/ECF No. 385); Mot. for Summ. J. and Mem. in Supp. (Lisa Sanders Shah), filed Aug. 31, 2015 (CM/ECF No. 491).

[2] *See* Minute Entry (CM/ECF No. 475).

[3] *See* Minute Entry (CM/ECF No. 469); Minute Entry (CM/ECF No. 502); *see also* Stipulated Mot. for Leave to File Second Am. Compl. and Mem. in Supp., filed Aug. 6, 2015 (CM/ECF No. 476) at 3-4 (wherein parties
(continued . . .)

Having considered the parties' briefs, the arguments of counsel, and the relevant law, the court finds as follows: (i) the Defendant ABIs conveyed to the Defendants, at best, conditional interests in the right to direct payments under the Affiliate Notes and conditional interests in the right to direct foreclosure and substitute a new trustee under the Affiliate Trust Deeds, (ii) the conditions necessary to effectuate such interests were never satisfied and, because of the receivership, can never be satisfied, and (iii) the Defendant ABIs are therefore effectively null.

Consistent with these findings and limited thereby, the court GRANTS the Receiver's summary judgment motions. Regardless of whether the Defendant ABIs are otherwise legally invalid or impermissible, they are effectively of no value as a valid security in real property.

## BACKGROUND

On June 25, 2012, the Securities & Exchange Commission ("SEC") brought a civil enforcement action—*Securities and Exchange Commission v. National Note of Utah, LC et al.*, Case No. 2:12-cv-00591 (D. Utah) (Jenkins, J.) (the "SEC Civil Enforcement Action")—against National Note of Utah, L.C. ("National Note") and Wayne L. Palmer ("Palmer"), alleging that Palmer through National Note operated a Ponzi scheme and offering fraud.[4] In the SEC Civil Enforcement Action, the court entered an order empowering the Receiver to take possession of the assets of Palmer, National Note, and all subsidiaries and affiliated entities and granting the Receiver general powers and duties related to those assets.[5]

---

( . . . continued)
stipulate that (i) the Receiver's summary judgment motion against Olson PSP may apply to Olson individually; (ii) parties' oral arguments made on June 24, 215 may apply to both Olson PSP and Olson; (iii) any legal issues set forth in the Receiver's summary judgment motion against Shah will apply to Olson PSP and Olson and that Olson and Olson PSP will incorporate any applicable arguments made by Shah; and (iv) based on the summary judgment motions against Olson PSP (to be applied also against Olson) and Shah, the court can enter final judgment on the Receiver's claims against Olson PSP, Olson, and Shah).

[4] *See* SEC Civil Enforcement Action, Complaint (CM/ECF No. 1).

[5] *See* SEC Civil Enforcement Action, Order Appointing Receiver and Staying Litigation (CM/ECF No. 9).

Pursuant to those powers, on August 22, 2014, the Receiver brought the present, ancillary lawsuit seeking relief against the Defendants.[6]

While each remaining Defendant has an individual relationship with National Note, the facts underlying each relationship, for purposes of the issues before the court, are substantially identical and common amongst the Defendants. These facts, generally, are as follows:

- National Note and an affiliate entity—either Expressway Business Park, LLC or Homeland Development II, LLC—purported to enter into an agreement whereby National Note lent funds to the affiliate in exchange for a note ("Affiliate Note") and a deed of trust ("Affiliate Trust Deed") purporting to give National Note a secured interest in certain real property.

- Thereafter, National Note entered into individual agreements with each remaining Defendant whereby the Defendants transferred funds to National Note in exchange for a promissory note ("Defendant Note") and an "Assignment of Beneficial Interest in Trust Deed for Security" ("Defendant ABI").

- Each Defendant ABI contains substantially identical language. Defendant Shah's ABI, for illustrative purposes, states as follows:

    > For value received, and to secure the payment of the indebtedness described below, the undersigned Assignor, National Note of Utah, L.C., hereby assigns to the Assignee(s), Lisa Sanders Shah, an undivided $400,000.00 of Assignor's right, title and interest in and to the beneficial interest in that certain [Affiliate Trust Deed] dated November 10, 2006, between Homeland Development II, LLC, as Trustor(s), in favor of Security Title Agency, Inc., as Trustee, for the benefit of National Note of Utah, LC, as Beneficiary . . .
    >
    > . . .
    >
    > Assignor hereby represents the following to Assignee(s):
    >
    > 1. The Assignor has duly performed all of the conditions imposed on Assignor under said [Affiliate Trust Deed] and the related [Affiliate Note].

---

[6] *See* Complaint, filed Aug. 22, 2014 (CM/ECF No. 2). The Complaint was subsequently amended as additional named defendants were added. *See* First Am. Complaint, filed May 13, 2015 (CM/ECF No. 396); Second Am. Complaint, filed Aug. 7, 2015 (CM/ECF No. 479); Third Am. Complaint, filed Jan. 14, 2016 (CM/ECF No. 512).

    2. The [Affiliate Trust Deed] is now in full force and effect, and the unpaid balance owing on the [Affiliate Note] secured by the [Affiliate Trust Deed] is $3,806,022.22 as of September 1, 2010.

    3. The [Affiliate Trust Deed] is assignable.

This assignment is given for the purpose of securing payment of the indebtedness evidenced by a [Defendant Note] dated August 6, 2010 in the principle sum of $400,000 in which Assignor is the maker, payable to the order of Assignee, at the times and in the manner and with interest as therein set forth.

As long as there is no default in the obligations of Assignor to Assignee in the [Defendant Note] from Assignor to Assignee, Assignor shall continue to collect all payments paid under the [Affiliate Note] secured by the [Affiliate Trust Deed] hereby assigned and shall have the right to enforce all remedies against the Trustors as makers of the [Affiliate Note] if there is a default under the [Affiliate Trust Deed] and/or the [Affiliate Note].

If there is any default in the payments due from Assignor to Assignee under the [Defendant Note] between them, and the default continues for more than sixty (60) days after written notice of said default from Assignee to Assignor, then Assignee shall have the right to give notice directly to the Trustor(s) under the [Affiliate Trust Deed], as makers of the [Affiliate Note] secured by the [Affiliate Trust Deed], to thereafter make all payments (or a proportionate amount of the payments if this is an assignment of a partial interest) under the [Affiliate Note] directly to Assignee until the payment default in the [Defendant Note] between Assignor and Assignee is fully and completely cured, including but not limited to the payment of all attorneys fees and costs incurred by Assignee in giving notice of default, directing Trustors to make payments directly to Assignee and otherwise enforcing the rights of Assignee against Assignor under the [Affiliate Trust Deed] and [Affiliate Note].

In addition to having the right to collect payments directly from the Trustors in the event of an uncured default under the [Defendant Note] between Assignor and Assignee as herein provided, if the Trustors default under the [Affiliate Trust Deed] and/or the [Affiliate Note] during the time of the uncured default between Assignor and Assignee, Assignee shall have the right to direct the Trustee to undertake

> foreclosure and all other available legal and equitable proceedings under the [Affiliate Trust Deed], for the benefit of Assignee, and, if Assignee deems such action advisable, to substitute a new Trustee under the [Affiliate Trust Deed] to take such actions.[7]

- The Defendant ABIs were filed of record.

- In the respective summary judgment motions, the Receiver argues that each Defendant ABI is an assignment of a deed of trust without an assignment of the underlying debt instrument and is void as a matter of law. The Receiver seeks a court determination and declaration that the Defendant ABIS are invalid.

## DISCUSSION

Ultimately, the summary judgment motions and the case against the Defendants really boil down to two questions. First, what interests, if any, did the Defendant ABIs convey to the Defendants? Second, if the Defendant ABIs transferred interests to the Defendants, what is the current status of such interests? The court will address each question in turn.

### I. What Did the Defendant ABIs Convey to the Defendants?

The court must first determine what interests, if any, the Defendant ABIs transferred to the Defendants. Although the Defendant ABIs are labeled "Assignment of Beneficial Interest in Trust Deed for Security," the label itself does not identify the nature of the "beneficial interest" or the rights such interest bestows. Instead, the court must look to the substance of the documents to determine what the Defendant ABIs transferred.[8] Having done so, the court finds that, at best, the Defendant ABIs transferred to the Defendants conditional interests in the right to direct payments under the Affiliate Notes and conditional interests in the right to direct foreclosure and substitute a new trustee under the Affiliate Trust Deeds. At worst, the Defendant ABIs transferred to the Defendants illusory interests that were spurious from inception.

---

[7] *See* (CM/ECF No. 491-1) at 42-43 of 44.

[8] *See* June 24, 2015 Hr'g Tr., at 28:19-29:3.

### a. *Conditional Interests in Directing Payments Under Affiliate Notes*

Nowhere in the Defendant ABIs does National Note state that it is hereby assigning, conveying, or otherwise transferring to the Defendants an interest in the Affiliate Notes. Instead, the Defendant ABIs state the following concerning the Affiliate Notes:

> As long as there is no default in the obligations of Assignor to Assignee in the [Defendant Note] from Assignor to Assignee, Assignor shall continue to collect all payments paid under the [Affiliate Note] secured by the [Affiliate Trust Deed] hereby assigned and shall have the right to enforce all remedies against the Trustors as makers of the [Affiliate Note] if there is a default under the [Affiliate Trust Deed] and/or the [Affiliate Note].
>
> If there is any default in the payments due from Assignor to Assignee under the [Defendant Note] between them, and the default continues for more than sixty (60) days after written notice of said default from Assignee to Assignor, then Assignee shall have the right to give notice directly to the Trustor(s) under the [Affiliate Trust Deed], as makers of the [Affiliate Note] secured by the [Affiliate Trust Deed], to thereafter make all payments (or a proportionate amount of the payments if this is an assignment of a partial interest) under the [Affiliate Note] directly to Assignee until the payment default in the [Defendant Note] between Assignor and Assignee is fully and completely cured, including but not limited to the payment of all attorneys fees and costs incurred by Assignee in giving notice of default, directing Trustors to make payments directly to Assignee and otherwise enforcing the rights of Assignee against Assignor under the [Affiliate Trust Deed] and [Affiliate Note].[9]

The Defendant ABIs' plain language indicates that they conveyed to the Defendants, at best, conditional interests in the right to direct payments under the Affiliate Notes.[10] And the conditions that must be satisfied in order for the Defendants' conditional interests to become operable are as follows: (i) National Note must default on its payment obligations under the

---

[9] *See* (CM/ECF No. 491-1) at 42-43 of 44. As before, the court references Defendant Shah's ABI out of convenience, but the court notes that the other Defendant ABIs contain substantially identical language.

[10] *See* Def. Kristine S. Olson Profit Sharing Plan's Mem. in Opp'n to Mot. for Summ. J., filed May 29, 2015 (CM/ECF No. 416) at 17-19 ("In this case, National Note conditionally assigned rights under the Expressway Note to Olson."); Def. Lisa Sanders Shah Mem. in Opp'n to Mot. for Summ. J., filed Sept. 30, 2015 (CM/ECF No. 496) at 10 n.16 ("In addition, as is the case here, assignments may be conditional.").

Defendant Notes; (ii) the Defendants must provide National Note with written notice of the default; (iii) National Note's default must continue for sixty days after the written notice; and (iv) the Defendants must direct the Trustors under the Affiliate Trust Deeds to thereafter make payments from the Affiliate Notes to the Defendants. Until such conditions are met, the Defendants have no interest in directing payments under the Affiliate Notes.

Thus, the court finds that the plain language of the Defendant ABIs, at best, transferred to the Defendants conditional interests in the right to direct payments under the Affiliate Notes.

### b. *Conditional Interests in Directing Foreclosure and Substituting Trustees Under Affiliate Trust Deeds*

While assignments of beneficial interest are not defined in Utah code,[11] the Utah State Legislature has provided a sense for what they generally expect an assignment of beneficial interest to entail. Utah Code Ann. § 57-1-22.5 notes that "[a] recorded notice of assignment of a beneficial interest, executed by the assigning beneficiary, is prima facie evidence of an assignment of the trust deed as described in the notice."[12] Importantly, the section also provides a template for what notice of assignments of beneficial interest should substantially contain. The template includes the following language:

> The undersigned hereby gives notice that it assigned and transferred *all* of its rights, title, and interest under the trust deed described below, together with *all* of the indebtedness secured thereby . . .

---

[11] *See* June 24, 2015 Hr'g Tr., at 24:19-21; 46:20-47:2.

[12] Utah Code Ann. § 57-1-22.5(1).

7

Utah Code Ann. § 57-1-22.5(2)(b) (emphasis added). This language suggests that the Utah State Legislature anticipated that an assignment of beneficial interest would entail transferring *all* right, title, and interest under a trust deed together with *all* of the indebtedness secured thereby.[13]

The Defendant ABIs do not follow the template envisioned by the Utah State Legislature. In the Defendant ABIs, National Note does not assign to the Defendants *all* right, title, and interest in the Affiliate Trust Deeds. Neither does National Note assign to the Defendants *all* of the indebtedness—*i.e.,* the Affiliate Notes—secured by the Affiliate Trust Deeds. Instead, the Defendant ABIs purport to assign to the Defendants a *partial* interest in National Note's interest in the Affiliate Trust Deeds.[14]

A close analysis of the language of the Defendant ABIs clarifies the nature of such partial interests in the Affiliate Trust Deeds. Like the Defendants' interests in payments from the Affiliate Notes, the Defendants' partial interests in the Affiliate Trust Deeds are, at best, conditional interests. The Defendant ABIs state as follows:

> In addition to having the right to collect payments directly from the Trustors in the event of an uncured default under the [Defendant Note] between Assignor and Assignee as herein provided, if the Trustors default under the [Affiliate Trust Deed] and/or the [Affiliate Note] during the time of the uncured default between Assignor and Assignee, Assignee shall have the right to direct the Trustee to undertake foreclosure and all other available legal and equitable proceedings under the [Affiliate Trust Deed], for the benefit of Assignee, and, if Assignee deems such action advisable, to substitute a new Trustee under the [Affiliate Trust Deed] to take such actions.[15]

---

[13] Although not analyzed by the parties, the court likewise finds no evidence that the Arizona State Legislature envisioned partial transfers of right, title, and interest under a trust deed.

[14] *See* (CM/ECF No. 491-1) at 42 of 44. Note: the dollar amounts of the partial interests vary between the individual Defendant ABIs.

[15] *See* (CM/ECF No. 491-1) at 43 of 44. The court again notes that each Defendant ABI contains substantially identical language.

8

This language indicates that, at best, the Defendant ABIs transferred to the Defendants conditional interests in the right to direct foreclosure and substitute a new trustee under the Affiliate Trust Deeds.[16] At the time the Defendant ABIs were executed, the Defendants had no operable right in the Affiliate Trust Deeds. The Defendants could do nothing with the Affiliate Trust Deeds unless three conditions were met. First, there must be an uncured default under the Defendant Note "as herein provided"—*i.e.*, (i) National Note must default on its payment obligations under the Defendant Notes; (ii) the Defendants must provide National Note written notice of the default; (iii) National Note's default must continue for sixty days after the written notice; and (iv) the Defendants must direct the Trustors under the Affiliate Trust Deeds to thereafter make payments to the Defendants. Second, in addition to National Note's default on its payment obligations under the Defendant Notes, there must be an overlapping default under the Affiliate Trust Deeds and/or Affiliate Notes. Third, during these overlapping defaults, the Defendants must direct the relevant trustee that foreclosure be undertaken.

Thus, the court finds that the plain language of the Defendant ABIs transferred to the Defendants, at best, conditional interests in the right to direct foreclosure and substitute a new trustee under the Affiliate Trust Deeds.

### c. *Illusory Interests in the Affiliate Notes and Affiliate Trust Deeds*

For purposes of this decision, the court will assume without deciding that the Defendant ABIs, as is the best case scenario for the Defendants, did transfer to the Defendants conditional interests. Nevertheless, the court notes its skepticism that the Defendant ABIs transferred to the Defendants anything more than illusory interests that were spurious from the start.

Although the Defendant ABIs purport to bestow to the Defendants conditional interests in the right to direct payments under the Affiliate Notes and conditional interests in the right to

---

[16] *See* Nov. 9, 2015 Hr'g Tr., at 42:19-43:8.

direct foreclosure and substitute a new trustee under the Affiliate Trust Deeds, the Defendants have never reconciled such bestowals with the language of the Affiliate Notes and Affiliate Trust Deeds themselves. For example, as to the right to direct payments under the Affiliate Notes, the Affiliate Notes indicate that the affiliate entity will make payments to the "Lender" and/or "Note Holder"—*i.e.*, National Note.[17] Likewise, as to the right to direct foreclosure and substitute a new trustee under the Affiliate Trust Deeds, the Affiliate Trust Deeds indicate that it is the "Lender"—*i.e.*, National Note—who, at its option, "may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder."[18] Thus, the Affiliate Notes and Affiliate Trust Deeds indicate that it is the "Lender" and/or "Note Holder" who directs payments and substitutes trustees. But the Defendants have provided no evidence that they ever assumed either role. And there is no evidence that the Defendants ever assumed or exercised any of the additional rights that would come with being the "Lender" and/or "Note Holder" under the Affiliate Notes and Affiliate Trust Deeds. These additional rights include the following:

- the right to alter the dates and amounts of monthly payments under the Affiliate Notes in light of affiliate prepayments;[19]

---

[17] *See* July 14, 2003 Expressway Business Park, LLC Promissory Note (CM/ECF No. 385-3) [hereinafter 2003 Expressway Note] ("Expressway Business Park, LLC ("Borrower") promises to pay to Central Bank ('Lender'), or order . . ."); March 31, 2005 Expressway Business Park, LLC Balloon Note (CM/ECF No. 384-3) [hereinafter 2005 Expressway Note] ("In return for a loan that I have received, I promise to pay U.S. $2,022,200.00 . . . plus interest, to the order of the Lender. The Lender is National Note of Utah, LC. I understand that the Lender may transfer this Note. The lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"); November 10, 2006 Homeland Development II, LLC Commercial Trust Deed Note (CM/ECF No. 491-1) [hereinafter 2006 Homeland Note] ("In return for a loan that I have received, I promise to pay three million dollars . . . plus interest, to the order of the Lender. The Lender is National Note of Utah, LC. I understand that the Lender may transfer this Note. The lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'").

[18] *See* March 31, 2005 Expressway Business Park, LLC Deed of Trust (CM/ECF No. 384-4) [hereinafter 2005 Expressway Deed of Trust]; November 10, 2006 Homeland Development II, LLC Deed of Trust (CM/ECF No. 491-1) [hereinafter 2006 Homeland Deed of Trust]; *see also* July 14, 2003 Expressway Business Park, LLC Deed of Trust (CM/ECF No. 385-4) [hereinafter 2003 Expressway Deed of Trust] ("Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Utah County, State of Utah.").

[19] *See* 2003 Expressway Note, *supra* note 17 ("Early payments will not, unless agreed to by Lender in
(continued . . .)

- the right to require payment in full of all unpaid principal and interest in the event of default under the Affiliate Notes;[20]

- the right to enter and inspect the properties underlying the Affiliate Trust Deeds;[21] and

- the right to make payments to protect the value of the properties underlying the Affiliate Trust Deeds, including paying sums secured by a lien in the properties, and the right to have such payments become additional debt secured by the Affiliate Trust Deeds.[22]

---

( . . . continued)
writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule."); 2005 Expressway Note, *supra* note 17 ("If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes."); 2006 Homeland Note, *supra* note 17 ("If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.").

[20] *See* 2003 Expressway Note, *supra* note 17 ("Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount."); 2005 Expressway Note, *supra* note 17 ("If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount."); 2006 Homeland Note, *supra* note 17 ("If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.").

[21] *See* 2003 Expressway Deed of Trust, *supra* note 18 ("Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust."); 2005 Expressway Deed of Trust, *supra* note 18 ("Lender or its agents may make reasonable entries upon and inspections of the Property."); 2006 Homeland Deed of Trust, *supra* note 18 ("Lender or its agent may make reasonable entries upon and inspections of the Property.").

[22] *See* 2003 Expressway Deed of Trust, *supra* note 18 ("If any action or proceeding is commenced that would materially affect Lender's Interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents . . . Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property . . . All such expenses will become a part of the Indebtedness and . . . [t]he Deed of Trust also will secure payment of these amounts."); 2005 Expressway Deed of Trust, *supra* note 18 ("If Borrower fails to perform the covenants and agreements contained in this Security Instrument or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs . . . Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument."); 2006 Homeland Deed of Trust, *supra* note 18 ("If Borrower fails to perform the covenants and agreements contained in this Security Instrument or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.

(continued . . . )

Indeed, the Defendants seem to concede that they never became the "Lender" or "Note Holder" under the Affiliate Notes and Affiliate Trust Deeds. The Defendants offer no contrary argument or evidence to the Receiver's contention that nothing in the Defendant ABIs prevented National Note (i) from forgiving the obligations owed under the Affiliate Notes and releasing the corresponding Affiliate Trust Deeds,[23] or (ii) from directing foreclosure for itself under the Affiliate Trust Deeds in the event that the relevant affiliate entities defaulted under the Affiliate Notes while National Note was still current under the Defendant Notes.[24]

For these reasons, the court is skeptical that the Defendant ABIs transferred to the Defendants anything more than illusory interests that were spurious from the start.[25] Nonetheless, as analyzed below, whether their original interests were illusory or conditional, the outcome is the same as to the Defendants' current interests in the Affiliate Notes and Affiliate Trust Deeds.

---

( . . . continued)
Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs . . . Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.").

[23] *See* June 24, 2015 Hr'g Tr., at 13:8-14:16, 29:19-30:3; *see also* 2003 Expressway Deed of Trust, *supra* note 18 ("If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property."); 2005 Expressway Deed of Trust, *supra* note 18 ("Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it."); 2006 Homeland Deed of Trust, *supra* note 18 ("Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it.").

[24] *See* June 24, 2015 Hr'g Tr., at 11:22-13:7; July 16, 2015 Hr'g Tr., at 5:22-6:4; Nov. 9, 2015 Hr'g Tr., 50:14-51:8; Reply Mem. in Supp. of Mot. for Summ. J. and Mem. in Support, filed June 17, 2015 (CM/ECF No. 450) at 11-13.

[25] The court also notes that there is no evidence that the underlying Affiliate Notes or Affiliate Trust Deeds empowered National Note to transfer *partial* interests in the Affiliate Trust Deeds to the Defendants. In fact, the most pertinent language contemplates a transfer of a partial interest in the Affiliate Notes but not a partial interest in the Affiliate Trust Deeds: "The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower." 2005 Expressway Note, *supra* note 17; 2006 Homeland Note, *supra* note 17.

## II. What is the Current Status of Any Interests Conveyed by the Defendant ABIs?

Assuming for purposes of this decision that the Defendant ABIs did transfer to the Defendants conditional interests in the right to direct payments under the Affiliate Notes and conditional interests in the right to direct foreclosure and substitute a new trustee under the Affiliate Trust Deeds, as is the best case scenario for the Defendants, the court must next consider the current status of such conditional interests.

There is no evidence in the record that the Defendants ever provided National Note with written notice of National Note's default under the Defendant Notes. There is no evidence in the record that the Defendants ever instructed that payments under the Affiliate Notes be directed to them.[26] As such, there is no evidence in the record that the Defendants ever satisfied the conditions, as previously outlined, that are required to effectuate any interest in the Affiliate Notes. Furthermore, there is no evidence in the record that, after having provided National Note with written notice of default under the Defendant Notes, there was ever a period of overlapping default under the Affiliate Notes during which the Defendants directed foreclosure under the Affiliate Trust Deeds. As such, there is likewise no evidence in the record that the Defendants ever satisfied the conditions necessary to effectuate any interest in the Affiliate Trust Deeds.

Moreover, because of the establishment of the receivership and appointment of the Receiver, the court finds that the conditions necessary to effectuate any interest in the Affiliate Notes or Affiliate Trust Deeds can never be satisfied. Time effectively froze on June 25, 2012, when the Receiver was appointed.[27] With the Receiver's appointment, "all persons and entities with direct or indirect control over any Receivership Assets and/or any Recoverable Assets, other

---

[26] Indeed, during a hearing before the court, counsel for Defendants PSP Olson, Olson, and Shah acknowledged that they had not asked for payments to be directed to them. *See* June 24, 2015 Hr'g Tr., at 31:14-25; Nov. 9, 2015 Hr'g Tr., at 45:3-25.

[27] *See* Order Appointing Receiver and Staying Litigation, *supra* note 5.

than the Receiver" were "restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating or otherwise disposing of or withdrawing such assets."[28] Essentially, the establishment of the receivership preserved the status quo perpetually. What was dormant before the receivership—*i.e.*, the Defendants' interests, if any, in the Affiliate Notes and Affiliate Trust Deeds—remains dormant.

Thus, the court finds that the current status of the Defendants' interests in the Affiliate Notes and Affiliate Trust Deeds is that of conditional rights whose conditions can never be satisfied. The Defendant ABIS are effectively null.

---

[28] *Id.* at 3.

## CONCLUSION

Having analyzed the plain language of the Defendant ABIs, the court finds that the Defendant ABIs conveyed to the Defendants, at best, conditional interests in the right to direct payments under the Affiliate Notes and conditional interests in the right to direct foreclosure and substitute a new trustee under the Affiliate Trust Deeds. The court also finds that the Defendants have never satisfied the conditions necessary to effectuate such interests, and, because of the imposition of the receivership, the Defendants never can.

Thus, regardless of whether the Defendant ABIs are otherwise legally invalid or impermissible, the court finds they are effectively of no value as a valid security in real property. Defendants may have claims against the receivership estate under the Defendant Notes, but such claims are not secured by the Defendant ABIs.

Consistent with these findings and limited thereby, the court hereby GRANTS the Receiver's summary judgment motions against the Defendants.

DATED this 25th day of October, 2016.

Bruce S. Jenkins
United States Senior District Judge